UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL A. SHEPARD, SR.,

                    Plaintiff,                            Case No.: 21-CV-501

v.

EMILY BLOZINSKI, et al.,

                    Defendants.

---

## OFFICER VANNESS'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. PROCEDURE 56

---

The defendant, Officer Vanness, by his attorneys, Crivello Carlson, S.C., respectfully submits this brief in support of his Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

### INTRODUCTION

The plaintiff, Michael Shepard, Sr. ("Inmate Shepard"), filed a *pro se* Complaint against Officer Vanness and jail medical staff at the Brown County jail. Plaintiff alleges that the defendants violated his Fourteenth Amendment rights by failing to provide him with medical care while he was an inmate at the Brown County jail. In particular, plaintiff alleges that at the time of booking into the jail, Officer Vanness took away his finger brace and did not arrange for medical care for his finger. Because Inmate Shepard cannot substantiate these claims as against Officer Vanness, dismissal of these claims against him is warranted.

1

## FACTUAL HISTORY

Officer Vanness's factual history is set forth in his proposed Findings of Material Facts in Support of his Motion for Summary Judgment and are referred to as "Defendant's Proposed Facts" (DPF). The following is a summary of those facts.

Michael A. Shepard, Sr. was an inmate at Brown County Jail who was booked into the Brown County jail on July 27, 2020. (DPF 1). Prior to July 27, 2020, Inmate Shepard was incarcerated at the Oneida County jail. (DPF 24-25). Inmate Shepard never had in his possession or was ever approved to wear a finger brace while at the Oneida County jail. (DPF 28, 31). A finger brace was not in Inmate Shepard's property during the transfer from Oneida County jail to the Brown County jail. (DPF 26-31).

If an inmate had a finger brace when being booked into the Brown County jail, the booking officer would question the inmate as to the brace and note that injury and information on the booking observation form. (DPF 35). During the booking of Inmate Shepard, he reported a prior injury to his finger but did not report any brace or need to wear any finger brace. (DPF 36). The booking observation form was sent to jail medical staff for review and evaluation. (DPF 38). The booking documents for Inmate Shepard do not contain any reference or report of Inmate Shepard having a finger brace, requesting to wear a finger brace or that he had anything else besides a prior cut to his finger, which was documented. (DPF 37, 52).

Officer Vanness is not a medical professional who can make medical decisions or can approve medical devices such as finger braces. (DPF 39). Any type of finger brace would have to be approved by jail medical staff before it can be worn by an inmate. (DPF 40-41). If the inmate indicated he or she did not need the brace during the incarceration, the brace would be placed in the inmate's property bag and documented. (DPF 42). Inmate Shepard's Brown

County property sheet does not contain any notation of any finger brace being used or placed into the property bag. (DPF 43). If an inmate needed a finger brace, that finger brace that finger brace would be placed in the medical bin for approval by the jail medical staff. (DPF 44).

Jail Officers at the Brown County jail are not involved in arranging for medical care unless it is an emergency situation, at which time the officer would contact medical staff immediately and/or the jail would call for emergency transport to the hospital. (DPF 49). Inmate Shepard did not present any emergency medical concerns during the booking process at the Brown County jail on July 27, 2020. (DPF 50). If Inmate Shepard raised a nonemergency medical issue or concern, such as use of a finger brace, he would have been informed that he could request for medical care and/or his finger. (DFP 47). Officer Vanness relied on medical staff to determine whether what, if any, medical care was needed. (DPF 51).

If an inmate complained about pain and the need for medications during the booking process, Officer Vanness would have noted the information on the booking observation form. This booking observation form would be relayed to medical staff for review and evaluation. If it were deemed an emergency, medical staff would be contacted right away. (DPF 53). As a correctional officer, Officer Vanness is not authorized to approve pain medication for an inmate. (DPF 54).

Inmate Shepard was familiar with and was informed of how to access medical care at the jail. (DPF 15, 21). In fact, Inmate Shepard was in contact with jail medical staff for various issues after being booked into the Brown County jail on July 27, 2020. He did not raise any issue to medical staff about his finger until September 9, 2020. (DPF 22). During this month and a half after booking, Inmate Shepard never requested to wear a brace or reported any issue or concern relating to his finger.

3

## I.  SUMMARY JUDGMENT STANDARD

Officer Vanness seeks dismissal of Inmate Shepard's claims pursuant to Federal Rule of Civil Procedure 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Summary judgment is not a disfavored remedy, but rather, "an integral part of the federal rules as a whole which are designed to secure the just, the speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A plaintiff cannot rest on the pleadings but must demonstrate the existence of sufficient evidence that if believed by a jury, would support a verdict in his or her favor. *Jelinak v. Greer*, 90 F.3d 242, 243-44 (7th Cir. 1996).  Absent a showing that a defendant may be liable, the defendant should not be required to undergo the considerable expense of preparing for trial. *Anderson*, 477 U.S. at 256-57.

In ruling on a motion for summary judgment, the District Court's role is to determine whether there is a genuine dispute as to a fact that is material and outcome determinative. *See Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). It is not enough to raise a "metaphysical doubt" with respect to the existence of a genuine issue of triable fact. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Nor does the mere existence of a factual dispute defeat summary judgment.  Rather, the requirement is that there be a *genuine* issue of *material* fact. *Anderson*, 477 U.S. at 248.  "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  The Court, when faced with a summary judgment motion, must decide whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict.  If not, the motion must be granted, and the case dismissed. *Palucki v. Sears Roebuck &*

*Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989). The failure of proof on the elements of plaintiff's claims makes all other facts immaterial. *Celotex*, 477 U.S. at 323. Here, the record shows that Inmate Shepard cannot substantiate his claims against Officer Vanness, requiring dismissal of this lawsuit against him.

## II.   THIS CASE MUST BE DISMISSED AS PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES[1]

Under the Prison Litigation Reform Act ("PLRA"), all inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Pursuit of administrative remedies is necessary no matter what relief plaintiff seeks, including monetary damages. *Pavey*, 544 F.3d at 740.

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. at 93. This allows the jail administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the jail's solution does not fully satisfy the prisoner. *Pozo v. McCaughtry*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *Porter v. Nussle*, 534 U.S. 516, 526 (2002).

Section 1997e(a) makes exhaustion of administrative remedies a precondition to filing suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). In order to exhaust his administrative remedies, an inmate must file complaints and appeals in the place and, at the time, in the manner that the jail's administrative rules require; substantial compliance does

---

[1] Officer Vanness was not a party to this action and did not file an Answer in this case until December 13, 2021. As Officer Vanness was not a party when this court issued its first Scheduling Order which included a date to file a motion based on exhaustion (July 26, 2021), Officer Vanness has included this argument in his motion for summary judgment.

not satisfy the PRLA. *Pozo v. McCaughtry, et al*, 286 F.3d 1022, 1025 (7th Cir. 2002). Unless an inmate completes the administrative process by following the rules the jail has established for that process, exhaustion has not occurred. *Id.* at 1023. Exhaustion means completing all stages of the process in a timely and proper manner as set forth in the procedure. *Id.* at 1024. In other words, an inmate cannot satisfy the requirements under Section 1997e by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

Inmate Shepard failed to follow the Brown County grievance procedure and exhaust his administrative remedies requiring dismissal of this case. Here, Inmate Shepard did not file any timely grievance regarding his finger brace and/or Officer Vanness's alleged improper conduct in taking it away during the booking process. (DPF ¶ 10, 14). Since Inmate Vanness failed to exhaust his administrative remedies relating to the allegations in the complaint, dismissal of this lawsuit is warranted.

## III.     OFFICER VANNESS IS ENTITLED TO QUALIFIED IMMUNITY

Officer Vanness is entitled to qualified immunity. First, Inmate Shepard suffered no constitutional deprivation. Second, any constitutional right Inmate Shepard may have had was not clearly established in a particularized sense at the time of the incident.

The United States Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Courts have explained that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow for reasonable errors "because officials should not err always on the side of caution [for

the] fear of being sued." *Humphrey v. Staszek*, 148 F.3d 719, 727 (7th Cir. 1998). The qualified

immunity defense "erects a substantial barrier for plaintiffs, and appropriately so because

qualified immunity is designed to shield from civil liability all but the plainly incompetent or

those who knowingly violate the law." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir.

1994).

A two-part test exists to determine whether qualified immunity applies. First, a court

must determine "whether the plaintiff's allegations, if true, establish a constitutional violation."

*Rakovich v. Wade*, 850 U.S. 1180, 1209 (7th Cir. 1988). Second, if the plaintiff can show a

constitutional deprivation, a court must then examine whether that constitutional right was

"clearly established" at the time. Id. The plaintiff bears the burden of establishing both

elements. *Id.*

In this case, Officer Vanness is entitled to qualified immunity for any Fourteenth

Amendment claim because the Plaintiff cannot establish a constitutional deprivation. Stated

differently, Inmate Shepard's Fourteenth Amendment rights were not violated. While no further

inquiry may be needed, the Plaintiff is also unable to meet his burden of showing that any

Fourteenth Amendment right was "clearly established" at the time of the incident. See *Saucier v.

Katz*, 533 U.S. 194 (2001); see *Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir. 1996)(a

court need not examine whether a right was clearly established when a plaintiff cannot show that

he or she suffered a constitutional deprivation). Officer Vanness is entitled to qualified

immunity for their actions if "a reasonable officer could have believed [that the action taken was]

lawful, in light of clearly established law and the information the officers possessed." *Estate of

Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993). To show that a law was clearly established, a

plaintiff must "offer either a closely analogous case or evidence that the defendant's conduct is

patently violative of a constitutional right that reasonable officials would know without guidance from a court." *Hope v. Pelzer*, 563 U.S. 730, 739 (2002). An allegedly violated right must have been "defined at the appropriate level of specificity before a court can determine if it was clearly established." See *Wilson v. Layne*, 526 U.S. 603, 615 (1999). In addition, the Seventh Circuit requires "caselaw which clearly and consistently recognizes the constitutional right." *Lojuk v. Johnson*, 770 F.2d 619, 629 (7th Cir. 1985) (finding that one supporting circuit court case, one supporting district court case and several other distantly related cases are insufficient to clearly establish a constitutional right). Qualified immunity is also warranted because plaintiffs cannot demonstrate – with the requisite level of specificity – a clearly established right at the time of the alleged deprivation. "Clearly established law" at the time of the incident cannot be shown with "high levels of generality." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). *See also White v. Pauly,* 137 S.Ct. 548 (2017)("This Court has issued a number of opinions reversing federal courts in qualified immunity cases" because the constitutional right was defined too broadly); *City of Escondido v. Emmons*, 139 S.Ct. 500 (2019)(overturning denial of immunity because "[u]nder our precedents, the Court of Appeals' formulation of the clearly established right was far too general."). Rather, it is shown by presenting "controlling authority" or "a robust consensus of cases of persuasive authority" as of the date of the incident in question. S*ee also Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014) (deciding in part that a constitutional right was not clearly established without previous case law); *Stanton v. Sims*, 134 S.Ct. 3, 5, 7 (2013) (reversing in favor of qualified immunity where prior case law "did not lay down a categorical rule for all cases"); *Reichle v. Howards,* 132 S.Ct. 2088, 2093-94 (2012)(rejecting "clearly established" argument where Supreme Court had "never recognized" similar arguments before).

In this case, Inmate Shepard cannot show that courts in this jurisdiction "clearly and consistently" recognized a Fourteenth Amendment right in cases that are factually analogous to the one at hand. There is no established caselaw which shows that Inmate Shepard has a constitutional right to medical care he chooses and that a booking officer violates his rights when he is not a medical provider but only booked him into the facility.

## IV. OFFICER VANNESS DID NOT VIOLATE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS

Inmate Shepard alleges that Officer Vanness violated his rights when he allegedly took away his finger brace during the booking process and did not arrange for medical care for his finger at the time of booking. The undisputed facts establish that Officer Vanness's actions were reasonable and did not violate plaintiff's Fourteenth Amendment rights.

First, there is no evidence Inmate Shepard ever had any finger brace at booking. (DPF 26-31, 36-37). Second, even if plaintiff did have some type of finger device, Officer Vanness had no authority to approve it. Rather, such a device would have been sent to medical staff for approval as to necessity. (DPF 39-40, 41). Third, at the time of booking, Officer Vanness properly questioned Inmate Shepard about his medical issues and documented all information on the booking observation form. This form was then timely relayed to medical staff for review and determination as to whether any intervention is needed. (DPF 34, 38). Fourth, Officer Vanness is not a medical provider and is not involved in providing or arranging for medical care unless it is an emergency, which Inmate Shepard's booking was not. (DPF 39). Inmate Shepard was informed of and was aware of the procedure of requesting medical care but did not formally request any medical care for his finger until a month and a half later. (DPF 6, 8, 21-23).

9

### A.    Officer Vanness Acted Reasonably

Under *Kingsley v. Hendrickson,* 135 S.Ct. 2466 (2015), a plaintiff must show that the actions of the correctional officer were objectively unreasonable.  *See also Miranda v. Cty. Of Lake*, 900 F.3d 335 (7th Cir. 2018).  This requires evidence that each defendant officer acted purposefully, knowingly, or recklessly when dealing with the inmate.  *See Miranda*, 900 F.3d at 353.  It must be remembered that this standard requires something more than negligence or even gross negligence and is more "akin to reckless disregard."  *Id.*  Therefore, to prove a violation of his Fourteenth Amendment rights relating to the actions of Officer Vanness, Inmate Shepard must show that this jail defendant acted with intentional or in reckless disregard of his medical condition.  Second, he must be shown that the actions taken by the defendant was objectively unreasonable.  The Seventh Circuit in *McCann v. Ogle Cnty.*, 909 F.3d 881 (7th Cir. 2018) explained:

> The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *Id.* at 353. A showing of negligence or even gross negligence will not suffice. See *id.*; accord *Darnell v. Pineiro,* 849 F.3d 17, 35-36 (2d Cir. 2017)(concluding that "[a]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence").

> At the second step, and now aligned with *Kingsley,* we ask whether the challenged conduct was objectively reasonable. See *Miranda,* 900 F.3d at 354. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable.

*McCann*, 909 F.3d at 886.

Inmate Shepard cannot submit sufficient evidence that Officer Vanness violated his Fourteenth Amendment rights with respect to his medical care at the Brown County jail.  Officer

Vanness questioned the plaintiff during the booking process and documented that information on the Booking Observation form. That form was relayed to the jail medical staff for evaluation. (DPF 38). During booking, Inmate Shepard did not report any finger brace or any immediate need for medical intervention. Rather, Inmate Shepard only reported a prior finger injury which was documented on the booking form and relayed to medical for evaluation as Officer Vanness had no authority to approve such devices. Any medical device plaintiff may have had would have been sent to HSU for evaluation. (DPF 36-37). Officer Vanness is not responsible for approving a finger brace or arranging for medical care unless it involves an emergency, which did not exist with plaintiff during the booking process. (DPF 39-41, 44, 49, 53, 54). Inmates are informed of the process for requesting medical care during the booking process. Inmate Shepard was aware of these procedures as he had requested medical care several times shortly after the booking process for issues unrelated to his finger brace. (DPF 6, 8, 21-23). Plaintiff did not formally submit any medical request relating to his finger or finger brace until 1 ½ months later on September 9, 2020. (DPF 22). Interestingly, Inmate Shepard requested medical care shortly after he dropped a storage bin on his finger. (DPF 23).

Furthermore, there is no record of plaintiff ever having any medical device at the time of booking at the Brown County jail or even while he was incarcerated at Oneida County jail. (DPF 26-31, 36, 37). If Oneida County jail never documented a finger brace in his property or ever approved the use of a finger brace while at the jail, Inmate Shepard would not have had that alleged finger brace in his possession when he was transferred and booked into the Brown County jail. Inmate Shepard was transported from Oneida County jail to the Brown County jail with *all* of his property. (DPF 26). Neither the transport form nor the property record documents list any finger brace in Inmate Shepard's possession. (DPF 27, 30).

The bottom line is that Inmate Shepard never had a finger brace with him at the time of booking. Even if he did, Officer Vanness did not have any authority to approve a medical brace or any medications plaintiff may be requesting. Any device would have been relayed to medical for approval.

## B.     Reliance on Medical Was Appropriate

Jail Officers and Administrators are entitled to rely on or defer to the evaluations and opinions of the jail medical staff. *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005); *Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). In other words, an officer or administrator is entitled to rely on the medical opinions, determinations and evaluations of the jail medical staff. The Court in *Greeno* explained:

> If a prisoner is under the care of medical experts…<u>a non-medical prison official will generally be justified in believing that the prisoner is in capable hands</u>. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. <u>Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor</u>.

*Greeno*, 414 F.3d at 656 (emphasis added)(citing to *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)); *see also*, *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006). The court in *Johnson* explained that it was reasonable for a jail officer to defer to the opinions of medical personnel.

> Nevertheless, <u>Curll did not disregard Johnson's complaints. He investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions</u>. *See Greeno,* 414 F.3d at 656 ("Perhaps it would be a different matter if [the non-medical prison official] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns.").

*Johnson*, 433 F.3d at 1010. (emphasis added). The Seventh Circuit in *Berry* reaffirmed the long-standing rule that non-medical jail officers are "encouraged" to defer to the professional judgments of medical staff. The Court explained that nonmedical jail administrators are permitted to rely on such expertise "without fear of liability for doing so". The Court explained:

> Berry failed to present sufficient evidence to support a reasonable jury finding that jail administrator Peterman acted with deliberate indifference. <u>As a nonmedical administrator, Peterman was entitled to defer to the judgment of jail health professionals so long as he did not ignore Berry</u>. See Hayes v. Snyder, 546 F.3d 516, 527-28 (7thCir. 2008); Johnson v. Doughty, 433 F.3d 1001, 1010-11 (7th Cir. 2006); Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005); Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004). The undisputed facts show that Peterman met this standard. He consulted with the medical staff, forwarded Berry's concerns to the DOC, and timely responded to Berry's complaints. That he took no further action cannot be seen as deliberate indifference. As a practical matter, it would be unwise to require more of a nonmedical staff member like Peterman. As Hayes, Johnson, Greeno, Spruill, and a host of other cases make clear, <u>the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so</u>. The district court properly granted summary judgment to defendant Peterman.

*Berry*, 604 F.3d at 440. (Emphasis added).

Here, jail medical staff was aware of the finger cut through the booking form. Officer Vanness was entitled to rely on the medical staff and their decision as to what medical care should be provided. As such, plaintiff's claims against Officer Vanness must be dismissed as he was entitled to rely on the expertise of the jail medical staff.

## CONCLUSION

Based upon the foregoing arguments and authorities, it is respectfully requested that this Court grant Officer Vanness's Motion for Summary Judgment dismissing this action and award this moving Defendant costs and disbursements of this action.

Dated this 8th day of July, 2022.

BY: *s/ Amy J. Doyle*

13

AMY J. DOYLE
State Bar No.: 1001333
Attorneys for Defendant, Officer Vanness
**CRIVELLO CARLSON, S.C.**
710 North Plankinton Avenue, Suite 500
Milwaukee, WI  53203
Phone: 414-271-7722
Fax:     414-271-4438
Email: adoyle@crivellocarlson.com